IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

EDGAR MCDANIEL,

    Plaintiff,

v.                                                                                 No. 04-2667 B

AMERICAN GENERAL FINANCIAL
SERVICES INC., AMERICAN UNICORN,
INC. d/b/a HOME STORE COMPANY,
TRI-STATE TITLE & ESCROW and
HAYSE NELSON,

    Defendants.

_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ALL
FEDERAL CLAIMS AND DISMISSING WITHOUT PREJUDICE THE REMAINING STATE
LAW CLAIMS
_____

The Plaintiff, Edgar McDaniel, filed the instant action against the Defendant, American General Financial Services, Inc. ("American General"),[1] on August 27, 2004, arising from a mortgage loan transaction. In his Complaint, McDaniel alleges that the Defendant violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639, the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2601 et seq., and the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 et seq. In addition, McDaniel asserts state law claims for fraud, conversion and breach of fiduciary duty. Before the Court is the motion of American General for summary judgment pursuant to Rule

---

[1] American Unicorn, Inc. d/b/a Home Store Company, Tri-State Title and Escrow, and Hayes Nelson were also named as Defendants in this action. On January 7, 2005, a stipulation of dismissal was entered dismissing Defendant Tri-State Title and Escrow from this action. On March 30, 2006, McDaniel filed a motion for default judgment against Defendants American Unicorn and Nelson. This motion has been referred to the magistrate judge for report and recommendation.

56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion of the Defendant is GRANTED as to the federal law claims and the remaining state law claims are DISMISSED without prejudice.

## BACKGROUND

The following facts are undisputed.[2] On September 4, 2003, the Plaintiff entered into a contract with American Unicorn, Inc. dba. Home Store ("Home Store") through which the Home Store agreed to furnish McDaniel with the materials and labor necessary to make specified improvements to his residence located at 1595 Locust Avenue, Memphis, Tennessee. (Alicia Hassell Dep. ("Hassell Dep."), Ex. A). The Home Store referred the Plaintiff to American General to obtain financing for the improvements. (Hassell Dep. at 89). American General does not have an affiliation or broker relationship with the Home Store or its principal, Hayes Nelson, nor did it pay any commission in exchange for the referral. (Hassell Dep. at 71-73, 75-76). On September 11, 2003, Alicia Hassell, a Customer Account Administrator at American General, received a faxed

---

[2] Local Rule 7.2(d)(3) provides that

> the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied . . . shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by affixing to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue.

LR 7.2(d)(3), Local Rules of the U.S. Dist. Ct. for the W. Dist. of Tenn. Additionally, the Federal Rules of Civil Procedure require that "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).
   On July 10, 2006, the Plaintiff filed his response to the Defendant's motion for summary judgment. The Court notes the Plaintiff's response is replete with myriad factual arguments–some relevant, others irrelevant–to the Defendant's motion for summary judgment. However, because the Plaintiff did not respond specifically in opposition to the facts submitted by the Defendant as provided by Local Rule 7.2(d)(3) or the Federal Rules of Civil Procedure, the Court must assume that those facts are undisputed.

copy of the contract between Plaintiff and the Home Store. (Hassell Dep. at 95). Hassell subsequently took a loan application from McDaniel and obtained his credit report, which reflected that he had a mortgage balance with Citicorp of $4861 as well as two credit cards with a total balance due of $2312. (Hassell Dep. at 89-90, 127, 170, 281-83, 340-41). Hassell advised the Plaintiff that he would have to pay the outstanding amounts due on his mortgage and credit cards before American General would lend him any money. At the time of his loan application, McDaniel received approximately $1200 per month from Social Security and retirement.[3] (Hassell Dep. at 126-27, 141, 143, 145, 149-51, 337; Def.'s Statement of Undisputed Material Facts ¶ 8).

Based on the income information, verified by McDaniel, American General pre-approved his application for a loan in the amount of $16,500. (Hassell Dep. at 120-23, 172-73). Hassell prepared the pre-disclosure documents, including the Good Faith Estimate of Settlement Charges ("Good Faith Estimate"), which listed the amount of, or range of, charges Plaintiff was likely to incur for the specific settlement services in connection with the loan. (Hassell Dep. at 177-78, Ex. D). These forms were hand-delivered by Hassell to McDaniel on or about September 11, 2003. (Hassell Dep. at 178-79, 189).

On September 12, 2003, Hassell ordered an appraisal of McDaniel's residence from Stewart Real Estate Appraisals ("Stewart"). (Hassell Dep. at 132). The Appraisal Report stated that the value of McDaniel's residence, without the proposed improvements, was $20,000. (Brad Steveson Dep. ("Steveson Dep.") at 79-80). Stewart included with the appraisal a Supplemental Addendum listing items not mentioned in the Home Store contract which were in need of replacement or repair.

---

[3] American General states it would not have approved the loan had it known the Plaintiff's income was less than the $1200 per month he reported. (Steveson Dep. 87-88).

(Def.'s Statement of Undisputed Material Facts, Ex. E at AG 0229). With the suggested improvements, Stewart appraised the value of Plaintiff's residence at $47,000. (Steveson Dep. at 80). Hassell subsequently advised McDaniel that American General would only provide him with a loan secured by his residence if all of the repairs in the Supplemental Addendum were completed. (Hassell Dep. at 228-234). Accordingly, an Addendum to the Home Store Contract was prepared which encompassed the additional repairs and increased the contract price to $23,000. (Hassell Dep. at 247, 343; Def.'s Statement of Undisputed Material Facts, Ex. F).

American General approved the loan to McDaniel in the principal amount of $34,690.04[4] with an annual percentage rate of 12.81. (Steveson Dep. at 40). The closing, held on September 29, 2003, was conducted by Alicia Hassell and attended by the Plaintiff and his girlfriend. (Hassell Dep. at 262; Steveson Dep. at 40). At the closing, Hassell went over the following documents with McDaniel: the Loan Agreement and Disclosure Statement, the HUD-1 Settlement Statement, the Truth in Lending Disclosures, the Itemization of Amount Financed, and the Notice of Right to Cancel Form. (Hassell Dep. at 263-66 & Ex. 25; Steveson Dep. at 48-49). She advised the Plaintiff, as to each item related to the loan, of the annual percentage rate, finance charges, total amount financed, total payments, the amount of the payments, the relevant dates relating to the payments, late charges, and the prepayment penalty. (Hassell Dep. at 264-65). Hassell also informed McDaniel that his property would be used as collateral for the loan. (Id. at 268, 284-86). She inserted some handwritten changes to the loan documents based upon updated loan payoff amounts, and thereafter, the Plaintiff signed the documents. (Id. at 101, 103, 219, 262-66). Hassell gave

---

[4]This amount included, in addition to the Home Store contract price of $23,000, McDaniel's outstanding balances on his mortgage and credit cards, the appraisal fee, the title insurance fee, the title examination fee, the recording fee, and three checks made payable to the Plaintiff in the amounts of $1,378.50, $2,861.21, and $82.67.

McDaniel copies of the paperwork, including two of the Notice of Right to Cancel Form.  (Id. at 279).

The Plaintiff agreed to have American General send his payoff checks to Dillard's, Cap 1 Bank, Citicorp, Couch & Associates, and the Home Store.  (Id. at 281-82, 341).  In addition, McDaniel received three checks at the closing in the following amounts: $1,378.50, $2,861.26, and $82.67.  (Def.'s Statement of Undisputed Material Facts, Ex. L) (the "payoff checks").  He used the check for $1,378.50 to pay for a Merit Life Insurance Policy that he purchased during the closing.  (Steveson Dep. at 67-72).  The policy was a non-credit life insurance policy for a term of five years, containing a death benefit of $5,000 and a one-time premium of $1,378.50.  (Def.'s Statement of Undisputed Material Facts ¶ 26, Ex. M).  The Plaintiff designated "Lorryne Morgan, Girlfriend" as the beneficiary of the policy.  (Id.).

At the time of the closing, the Plaintiff had a designated representative payee for his Social Security benefits.  (Annie Jones Dep. "Jones Dep." at 10; Def.'s Statement of Undisputed Material Facts ¶ 33).  However, McDaniel's mental infirmities or lack thereof were not assessed or diagnosed by anyone during the time of the loan.  (Def.'s Statement of Undisputed Material Facts ¶ 35).

The Plaintiff eventually defaulted on the loan, causing American General to begin foreclosure proceedings against McDaniel's interest in the property.  (Def.'s Statement of Undisputed Material Facts ¶ 31).  This cause of action followed.

## STANDARD OF REVIEW

Rule 56( c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law.

Fed. R. Civ. P. 56 (c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988).  In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324, 106 S. Ct. at 2552.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322, 106 S. Ct. at 2552.  In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."  Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)).  Finally, the "judge may not make credibility determinations or weigh the evidence."  Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

I.  Truth in Lending Act Violations (Failure to Disclose)

The Defendant contends that it did not violate the provisions of TILA, 15 U.S.C. § 1601 et seq., by failing to give the Plaintiff two copies of the Notice of Right to Cancel Form, that no material facts concerning this issue are in dispute, and that it is entitled to judgment as a matter of law. The Plaintiff's response asserts that American General violated TILA by "providing contradictory and confusing information" to him and by not providing him material disclosures as to the amount financed, finance charges, and notice of the right to cancel. He complains that the Defendant gave him the documentation in an "avalanche of documents" but did not provide him the Notice of Right to Cancel Form as required under federal law.

Congress enacted TILA in 1968 in order to promote the informed use of credit by mandating meaningful disclosure of credit terms to consumers. See 15 U.S.C. § 1601(a); Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 559, 100 S. Ct. 790 (1980); Begala v. PNC Bank, Ohio, Nat'l Ass'n, 163 F.3d 948, 950 (6th Cir. 1999). This Court is to construe TILA "liberally in the consumer's favor." Baker v. Sunny Chevrolet, Inc., 349 F.3d 862, 864 (6th Cir. 2003) (citing Jones v. TransOhio Sav. Ass'n, 747 F.2d 1037, 1040 (6th Cir. 1984)). In this case, the sections of TILA principally involved are 1635, 1638(a), 1638 (b), along with the accompanying Regulation Z promulgated by the Federal Reserve. See 15 U.S.C. §§ 1635, 1638(a), (b);12 C.F.R. § 226.1 et seq. These statutes and regulations require creditors to make specific disclosures on prescribed forms or face possible civil action by the aggrieved consumer pursuant to section 1640(a). See 15 U.S.C. § 1640(a).

In this case, the undisputed facts reflect that Hassell and American General provided the required disclosures to the defendant, including two copies of the Notice of Right to Cancel Form. Further, this Court finds from the record that the documents generated by American General and

used in this transaction comply with the strictures of Regulation Z. See, e.g., 12 C.F.R. § 226, App. H (approving and listing by way of example various loan documents). Because Plaintiff has failed to offer any credible evidence demonstrating that Defendant American General violated TILA's disclosure requirements as referenced, the Court GRANTS the Defendant's motion as related to this contention.

II.  TILA Violation–HOEPA (Enhanced Disclosures)

The Defendant next contends that it did not violate any provision of the Home Ownership and Equity Protection Act, "HOEPA." American General claims neither the 12.81% interest rate it charged Plaintiff nor the closing costs triggered HOEPA's enhanced disclosure requirements. McDaniel responds that the loan disregarded HOEPA's enhanced disclosure requirements because the interest rate exceeded the permissible amount and because the finance charge was excessive.

Concerning the interest rate, the Plaintiff argues that American General's loan operated in a manner designed to "manipulate Federal Regulations." As to the finance charge, the Plaintiff maintains that this Court should consider the premium he paid for the life insurance policy purchased at the time of the closing and the fee for the appraisal of his home as finance charge fees for purposes of HOEPA. Specifically, McDaniel asserts that the life insurance policy premium was a finance charge pursuant to section 226.23 of Regulation Z, 12 C.F.R. § 226.23, because the policy was credit insurance and that the appraisal fee was a finance charge because it was neither bona fide nor reasonable.

Congress enacted HOEPA as an amendment to TILA, see 15 U.S.C. §§ 1602(a)(a), 1610, 1639, 1640, for the primary purpose of "forc[ing] the 'High Cost Mortgage' market to police itself." Bryant v. Mortgage Capital Res. Corp., 197 F. Supp. 2d 1357, 1364 (N.D.Ga. 2002) (citing S. Rep.

No. 103-169, at 28 (1994), reprinted in 1994 U.S.C.C.A.N. 1881, 1912). If a loan is a HOEPA loan, creditors "must make certain warnings and disclosures in conspicuous type size at least three business days prior to the consummation of a HOEPA transaction." Booker v. Wells Fargo Home Mortgage, Inc., 138 Fed. Appx. 728, 730 (6th Cir. 2005) (citing 15 U.S.C. § 1639(a)-(b)(1)). Even when a loan is of the type regulated by HOEPA, it is not subject to the HOEPA's enhanced disclosure requirements unless it also features either: (a) an annual percentage rate that exceeds by 8% the yield on a Treasury bill with a comparable period of maturity; or (b) points and fees payable at or before closing that exceed the greater of eight percent of "the total loan amount" or $400. See 15 U.S.C. §§ 1602(aa)(1), 1639(a)(1); 12 C.F.R. 226.32(a)(1)(I)-(ii).[5]

A.   Excessive APR

At the time of the loan in this case, the Treasury bill rate for a ten-year period was 4.49% and the rate for a twenty-year period was 5.45%. See Federal Reserve Statistical Release–Selected Interest Rates (Aug. 18, 2003), available at http://www.federalreserve.gov/releases/h15/20030818/ (last visited Aug. 25, 2006). In instances when the loan period and the Treasury bill period are not

---

[5]This section provides,
> (1) Except as provided in paragraph (a)(2) of this section, the requirements of this section apply to a consumer credit transaction that is secured by the consumer's principal dwelling, and in which either:
> (i) The annual percentage rate at consummation will exceed by more than 8 percentage points for first-lien loans, or by more than 10 percentage points for subordinate-lien loans, the yield on Treasury securities having comparable periods of maturity to the loan maturity as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or
> (ii) The total points and fees payable by the consumer at or before loan closing will exceed the greater of 8 percent of the total loan amount, or $400; the $400 figure shall be adjusted annually on January 1 by the annual percentage change in the Consumer Price Index that was reported on the preceding June 1.

uniform, the Federal Reserve has stated,

> Commenters also sought guidance for selecting the proper maturity for loan maturities that do not match those of Treasury securities. The Board believes that creditors could use rounding. For example, if a creditor must compare the APR to Treasury securities with either seven-year or ten-year maturities, the APR for an eight-year loan would be compared to securities with a seven-year maturity; a nine-year loan would be compared to securities with a ten-year maturity. If the loan maturity is exactly halfway between the maturities for two published Treasury securities, the creditor would compare the APR to the yield for the lower Treasury security.

60 Fed. Reg. 15,463, 15,465 (Mar. 24 1995) (Final Rule).

The Court notes the Plaintiff's loan was for a period of 182 months, two months greater than fifteen years. Therefore, the Court finds that the applicable annual percentage rate for purposes of HOEPA was the twenty-year Treasury bill rate of 5.45%, making 13.45% the trigger interest rate under HOEPA for McDaniel's loan. Because American General charged the Plaintiff 12.81%, HOEPA affords him no relief. Thus, the Court GRANTS the Defendant's motion for summary judgment as it relates to this contention.

B.     Excessive Costs and Fees

The points and fees relevant necessary to trigger the HOEPA requirements are defined by the statute to include

> (A) all items included in the finance charge, except interest or the time-price differential;
> (B) all compensation paid to mortgage brokers;
> (C) each of the charges listed in section 1605(e) of this title (except an escrow for future payment of taxes), unless-
> (i) the charge is reasonable;
> (ii) the creditor receives no direct or indirect compensation; and
> (iii) the charge is paid to a third party unaffiliated with the creditor; and
> (D) such other charges as the Board determines to be appropriate.

10

Morrison v. Brookstone Mortgage Co., 415 F. Supp. 2d 801, 807 (S.D. Ohio 2005) (citing 12 C.F.R.§ 1602(aa)(4)).  The only insurance premiums which may be considered as fees for the purposes of HOEPA are those associated with credit life insurance.  See 12 C.F.R. § 226.32(b)(1)(iv).[6]

In this case, the Court notes that the life insurance policy in question provided for a death benefit of $5000 payable to the beneficiary, "Lorryne Morgan, Girlfriend." However, in his response, McDaniel argues that this Court should consider the policy as one for credit life insurance because "conflicting language is contained in the section headed Assignment of Unearned Insurance Premium and Policy Proceeds found in the Truth in Lending Disclosures Form that seems to indicate that the proceeds of the Merit Life Insurance policy are actually assignable to American General." (Pl.'s Response to Def.'s Mot. Summ. J.).

> The Court notes that the relevant language cited by the Plaintiff provides,
>
>> I, where authorized by law, hereby assign to Lender any moneys, not in excess of the unpaid balance of indebtedness which this instrument secures, which may become payable under any insurance I have elected and purchased through Lender in connection with this transaction <u>which protects the loan account or collateral (including, but not limited to, voluntary credit and personal property insurance)</u> . . . ."

(Def.'s Statement of Undisputed Material Facts, Ex. G, at AG 0033) (emphasis added).  The Court finds that McDaniel's contention in this regard is without merit as the life insurance policy in question does not qualify as a fee under section 226.32(b)(1)(iv) because it does not provide for "cancellation of all or part of the consumer's liability in the event of the loss of life . . . ." 12 C.F.R.

---

[6] The regulation qualifies as a fee "[p]remiums or other charges for credit life, accident, health, or loss-of-income insurance, or debt-cancellation coverage . . . that provides for cancellation of all or part of the consumer's liability in the event of the loss of life, health, or income or in the case of accident, written in connection with the credit transaction." 12 C.F.R. § 226.32(b)(1)(iv).

§ 226.32(b)(1)(iv).

The Court also finds that the appraisal charge of $310 does not qualify as a fee under section 226.32(b)(1)(iii) or 226.4(c)(7)(iv).  Specifically, section 226.4 provides,

> (c) <u>Charges excluded from the finance charge</u>.  The following are not finance charges:
> . . . .
> (7) <u>Real-estate related fees</u>.  The following fees in a transaction secured by real property or in a residential mortgage transaction, if the fees are bona fide and reasonable in amount:
> . . . .
> (iv) <u>Property appraisal fees</u> or fees for inspections to assess the value or condition of the property if the service is performed prior to closing . . . .

12 C.F.R.226.4(c)(7)(iv) (emphasis added).  Thus, the fee for an appraisal is specifically excluded from the coverage of a finance charge.  In addition, the Plaintiff has failed to present any credible evidence demonstrating that the $310 fee was not bona fide or reasonable.

Therefore, the Court GRANTS the Defendant's motion on this issue.

### III.  RESPA Violation

The Defendant next insists it did not violate any provision of the Real Estate Settlement Procedures Act, "RESPA," in the course of this loan transaction.  <u>See</u> 12 U.S.C. § 2601 et seq.  The Plaintiff responds that American General breached RESPA by not properly delivering to him the Good Faith Estimate of Settlement Charges and by charging him unearned and/or excessive fees.  Specifically, McDaniel argues that the 4% loan discount fee that American General charged him did not comply with RESPA.

The Court finds that American General's delivery of the Good Faith Estimate of Settlement Charges is undisputed for purposes of this motion, <u>see</u> <u>supra</u>, at 2 n.2, 3-4.  Regarding the excessive and/or unearned fee, the Court notes McDaniel has failed to specify how the 4% fee charged by

12

American General violates RESPA. The Court further determines the Plaintiff has not demonstrated how any other fee was unearned for purposes of RESPA, and finds the Plaintiff has failed to produce sufficient evidence to sustain this contention. No genuine issue of material fact regarding this contention is in dispute, and therefore the Court GRANTS the Defendant's motion on this claim.

## CONCLUSION

Having disposed of the Plaintiff's claims under federal law, the Court now turns to McDaniel's state law claims against American General. The exercise by a district court of supplemental, or pendent, jurisdiction over state law claims is governed by title 28 section 1367 of the United States Code, which expressly permits the Court to decline the exercise of jurisdiction when it has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3). Absent any remaining federal claims against American General, the Court, in its sound discretion, hereby dismisses without prejudice the Plaintiff's claims against this Defendant under state law. See Weeks v. Portage County Executive Offices, 235 F.3d 275, 279-80 (6th Cir. 2000) (stating that a district court's decision to decline to exercise supplemental jurisdiction lies within its sound discretion).

For the foregoing reasons, the Court GRANTS the motion of American General for summary judgment as to the Plaintiff's federal claims. Furthermore, in the Court's discretion, the Plaintiff's remaining state law claims against the Defendant are DISMISSED without prejudice.

IT IS SO ORDERED this 30th day of August, 2006.

                                       s/ J. DANIEL BREEN
                                       UNITED STATES DISTRICT JUDGE